IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LULA BELLE SAPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-153 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Lula Belle Sapp appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED,** that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff protectively applied for DIB and SSI on January 3, 2012, alleging a disability onset date of June 1, 2006. Tr. ("R."), pp. 16, 157-58, 163. Plaintiff subsequently amended her alleged onset date to November 8, 2011 because on November 7, 2011, a previously unfavorable decision had been issued on Plaintiff's prior applications also alleging a disability onset date of

June 1, 2006. R. 40, 67-80. Plaintiff was fifty years old on her amended alleged disability onset date and was fifty-two years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 20, 29, 157.

Plaintiff applied for disability benefits based on allegations of asthma, degenerative disc disease of the lumbar spine, hypertension, hyperlipidemia, and status post bilateral carpal tunnel release. R. 18-19, 41. Plaintiff has a tenth grade education, R. 42, and prior to her alleged disability had worked at the Augusta Chronicle as a mailer who inserted coupons in the paper and then delivered the papers to designated drop stations. R. 52, 53. Plaintiff was injured on the job on June 1, 2006, and received approximately $33,000 in temporary disability benefits from her employer before receiving a workers' compensation claim net settlement in 2008 of $60,000. R. 134-56.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 81, 85, 89, 93. Plaintiff requested a hearing before an ALJ, R. 98, 100, and the ALJ held a hearing on May 2, 2013. R. 35-58. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Clarence Hewlett, a Vocational Expert. Id. On May 10, 2013, the ALJ issued an unfavorable decision. R. 13-34.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her amended alleged onset date of November 8, 2011 (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar [spine] and status post bilateral carpal tunnel release (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except occasional climbing of ramps and stairs.[1] No climbing of ladders, ropes or scaffolds. Frequent balancing. Occasional stooping. No kneeling, crouching, or crawling. Avoid concentrated exposure to extreme heat, cold, fumes, odors, dusts, gases and poor ventilation. Thus, the claimant is unable to perform any past relevant work (20 C.F.R §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including office helper, mail clerk, and ticket seller (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2011, through May 10, 2013 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 18-28.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence

---

[1] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

because (1) the ALJ failed to properly weigh the medical opinion evidence, and (2) the ALJ failed to adequately explain how he arrived at Plaintiff's RFC because he did not discuss her use of a cane or properly evaluate Plaintiff's credibility. See doc. no. 15. The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 16. The Commissioner also suggests that, because Plaintiff's brief relies on Fourth Circuit case law rather than the controlling authorities of the Eleventh Circuit, she has conceded that she cannot establish disability under the law of this Circuit. Id. at 4 n.2. The Court declines to find such a concession.

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894

F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

At the administrative hearing, Plaintiff amended her alleged onset date from June 1, 2006 to November 8, 2011, because there was a previous unfavorable decision on her DIB and SSI applications issued on November 7, 2011, after a hearing before a different ALJ. R. 40, 67-80. As she was during the current proceedings under review, Plaintiff was represented by an attorney at the first administrative hearing. R. 70. That first ALJ also determined that Plaintiff had an RFC for light work that allowed her to perform her past relevant work as a Mailer, as well as other light jobs like Deli Cutter/Food Prep and Parking Lot Attendant. R. 73-76. There was considerable overlap of the evidence before the ALJ during the first proceedings and the ALJ

5

during the proceedings currently under review, including the treatment records of Scott Pidcock, D.C., Plaintiff's chiropractor, and two consultative examinations by Achinder Ohri, M.D. R. 74-75. Plaintiff did not appeal the prior denials, and the prior unfavorable decision was not re-opened in the current proceedings. Thus, for purposes of this case, Plaintiff must establish, post November 7, 2011 (the date of the last unfavorable decision), "the inability to engage in any substantial gainful activity by reason of any medically determinable impairment . . . has lasted or can be expected to last for a continuous period of not less than 12 months." Stone v. Commissioner of Soc. Sec. Admin., 596 F. App'x 878, 879 (11th Cir. 2015).

Having failed to challenge the administrative assessment of her medical records in the prior proceedings, Plaintiff now challenges the ALJ's most recent assessment of the records of her primary care physician, Robert Campbell, M.D., Dr. Pidcock, Dr. Ohri, and Thomas A. Parfenchuck, M.D., Plaintiff's treating orthopedist. According to Plaintiff, the records of all of these doctors show that she is unable to perform light work, and the ALJ failed to properly explain why he discounted these opinions in determining that Plaintiff was not disabled.

### A. Weight Afforded to Opinions of Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th

6

Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities). A treating physician's opinion may also be discounted where it "appears to be based primarily on [the claimant's] subjective complaints of pain." Crawford, 363 F.3d 1155 at 1159.

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Commissioner of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) & 416.927(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency

7

medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d) & 416.927(d).

### B. The ALJ Properly Weighed the Medical Opinions of Record.

On April 18, 2013, Dr. Campbell, Plaintiff's primary care physician at Christ Community Health Services, filled out a Lumbar Spine Medical Source Statement, a four page form from Social Security Disability Practice, that asks a physician to answer certain questions regarding a patient's impairment and "[a]ttach relevant treatment notes, radiologist reports, laboratory and test results as appropriate." R. 741-44. Dr. Campbell did not answer all of the questions and did not attach any supporting documentation, but he did diagnose Plaintiff with bulging disc and lumbar radiculopathy, as well as chronic pain and fatigue. R. 741. He filled out this form even though he did not primarily treat Plaintiff for her back condition, and in multiple treatment notes, Plaintiff's "Assessment" was listed primarily as Hyperlipidemia and Hypertension. See, e.g., R. 721, 750, 755. Dr. Campbell had no opinion on how many city blocks Plaintiff could walk without rest or severe pain, but he did opine that Plaintiff could only sit or stand for five minutes at a time. In a total eight-hour work day, Dr. Campbell opined that Plaintiff could sit and stand/walk less than two hours, but he offered no opinion on whether Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking. R. 742. Nor did he offer an opinion as to whether

8

Plaintiff needed to include periods of walking during an eight-hour day, and although he said Plaintiff would need frequent unscheduled breaks during a work day, he could not say how long such breaks would need to last. Id.

Dr. Campbell said that Plaintiff did not need a cane or other assistive device to engage in occasional standing/walking, but she could "never" lift any amount of weight, and could "never" twist, stoop, crouch/squat, climb ladders, or climb stairs. R. 743. Dr. Campbell had no opinion how much of a typical work day Plaintiff would likely be off task, but he did say that Plaintiff would likely be absent from work more than four days per month. R. 744. He filled out this "check off" form the same day Plaintiff came to see him "to discuss disability." R. 760. According to treatment notes from that day's visit, Plaintiff reported that the pain from her right low back to her foot was "killing [her]," and she "would like disability." Id. Plaintiff's treatment plan included only two prescriptions, id., but she did obtain the completed Lumbar Spine Medical Source Statement suggesting she could not work. R. 741-44.

The ALJ acknowledged this opinion from Dr. Campbell, a treating physician, but gave it "little weight" because the severe functional limitations were inconsistent with the objective medical evidence, including MRI and x-ray evidence that revealed only mild degenerative changes in Plaintiff's back. R. 23, 27. The ALJ noted "success at treating and/or managing the claimant's back pain from mild degenerative disc disease of the lumbar spine with the use of prescription medications and injections." R. 23. Indeed, the notes of Dr. Parfenchuck, Plaintiff's treating orthopedist, found in Exhibits 14F and 25F and referenced explicitly or by incorporation by the ALJ at R. 21, 23, and 24, acknowledged Plaintiff's degenerative disk disease with osteoarthritic changes and grade 1 spondylosis at

9

L4-L5, as well as disk protrusion at L5-S1, with non-compressive disk bulges noted at L2-L3, L3-L4. R. 519.²

However, post imaging of Plaintiff's back on December 11, 2009 and May 19, 2010, R. 416, 425, Dr. Parfenchuck repeatedly referenced "conservative care," to include medication, walking and stretching exercises, and consideration of future epidural injection treatments. R. 513, 700. Dr. Parfenchuck specifically stated in notes dated March 15, 2012, that he will continue Plaintiff on conservative care and that surgical intervention is not in her best interest. R. 700. "She does not have severe spinal stenosis just a disk protrusion and early spondylolisthesis." Id. Indeed, the ALJ stated that the imaging in the record showed "no cord or nerve root compression or other abnormalities that could be seen as consistent with the claimant's alleged level of pain and limitation," R. 24, which Plaintiff now claims Dr. Campbell's opinion supports. Nor has Plaintiff identified any such medical evidence in support of the claimed severe functional limitations.

To the extent Plaintiff also complains that the ALJ erred by not making any separate findings concerning the records of her chiropractor, Dr. Pidcock, according to the social security regulations, the only sources "who can provide evidence to establish an impairment" are licensed physicians (medical or osteopathic doctors), licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R. §§ 404.1513(a) & 416.913(a). The opinion of a chiropractor is not considered an "acceptable source" and therefore cannot establish the existence of an impairment. Crawford, 363 F.3d

---

²The notes at R. 519 are from Dr. Joseph P. Rectenwald, an apparent colleague of Dr. Parfenchuck at the Orthopedic Clinic division of University Health. In any event, Dr. Parfenchuck saw Plaintiff again at the Orthopedic Clinic on March 15, 2012 and did not alter the Dr. Rectenwald's characterization of Plaintiff's back condition, as discussed in detail herein.

10

at 1160 (citing 20 C.F.R. §§ 404.1513(a) & 416.913(a).) Although the regulations allow that the ALJ "may" use evidence from sources other than an "acceptable source" to evaluate the severity of an impairment or a claimant's ability to work, 20 C.F.R. §§ 404.1513(d) & 416.913(d), Plaintiff cites to nothing in Dr. Pidcock's records that undermines the ALJ's determination that Plaintiff has an RFC for light work.

Most of Dr. Pidcock's notes in the record pre-date Plaintiff's alleged November 8, 2011 onset date, R. 391-400, 425-71, and those records, along with the one page of notes that post-date November 8, 2011, R. 748, do not shed any new light on Plaintiff's condition, as they are mostly a series of check marks and circles on office note forms. To the extent Dr. Pidcock also noted some pain and decreased range of motion in Plaintiff's dorsal/lumbar spine, R. 392, 428,[3] there is nothing imposing specific functional restrictions on Plaintiff, even if Dr. Pidcock were considered an acceptable medical source. Although Plaintiff attempts to make much of the fact that the "Impression" listed at the bottom of an imaging report from May 19, 2010 states Plaintiff has a "large" protruded disc, R. 425, an MRI from August 24, 2010, R. 665, revealed non-compressive disc bulges and a central disc protrusion. When considered by an orthopedist, *i.e.*, an acceptable medical source, Dr. Parfenchuck and an orthopedic colleague noted the disc protrusion but still concluded that conservative treatment options were appropriate. R. 513, 519, 700.

Moreover, in discounting Dr. Campbell's opinion, the ALJ relied on the expert opinion of Dr. Achinder Ohri, who conducted two consultative examinations of Plaintiff. The ALJ extensively reviewed Dr. Ohri's findings and assigned them "some weight." R. 21-25. Dr. Ohri

---

[3]These records appear to be copies of the same notes dated September 25, 2009, before the November 8, 2011 alleged onset date.

11

concluded that Plaintiff had degenerative disc disease of the lumbar spine but did not state that she was significantly impaired. With respect to Plaintiff's back, Dr. Ohri stated that during his first examination on December 11, 2009, she had some tenderness in her lower back and could get on and off the examination table with difficulty. R. 405. He diagnosed chronic lower back pain, possibly due to degenerative disease of the lumbar spine, with an ability to "perform moderate physical activities." R. 405-06. During the second examination on October 14, 2010, Dr. Ohri again found tenderness in Plaintiff's lower back and difficulty getting on and off the examination table. R. 486. This time, Dr. Ohri also noted Plaintiff was limping and using a cane as an assistive device. Id. The clinical impression of chronic lower back pain, possibly due to degenerative disease of the lumbar spine, did not change, and Dr. Ohri concluded that Plaintiff "can perform limited activities." Id.

Plaintiff does not argue that the ALJ erroneously recounted any of Dr. Ohri's findings, but instead takes issue with the ALJ's characterization of Plaintiff's examinations as "unremarkable." R. 26. However, Plaintiff points to nothing in Dr. Ohri's findings that would prevent her from performing light work.[4] The ALJ thoroughly vetted Dr. Ohri's opinions, and his decision to afford them "some weight" is supported by substantial evidence.

In sum, the ALJ thoroughly analyzed and properly weighed the medical opinions on record in this case. Nothing in the medical evidence supports the level of severe functional restrictions espoused by Dr. Campbell in his Lumbar Spine Medical Source Statement. Although Plaintiff disputes the meaning attached by the ALJ to various medical opinions, the

---

[4]The Court addresses Plaintiff's contentions about the use of a cane, referenced in Dr. Ohri's 2010 opinion, in Part III.C.

ALJ's weighing of the opinions is supported by substantial evidence, and Plaintiff's argument on this point forms no basis for a remand.

### C. The ALJ Properly Omitted Use of a Cane when Formulating Plaintiff's RFC.

Plaintiff also complains that the ALJ incorrectly formulated an RFC for light work because he did not account for her use of a cane. According to Plaintiff, because the ALJ acknowledged in his thorough review of the medical opinions Dr. Ohri's note during his 2010 evaluation Plaintiff had a limping gait and used a cane for ambulation, failing to discuss restrictions imposed by the use of a cane when formulating Plaintiff's RFC was error.

To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 191 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device and describing

13

circumstances in which device is needed], she has failed to show that the use of a cane is medically required.").

Plaintiff does not point to any evidence showing that her use of cane is medically necessary. First, Plaintiff went to her administrative hearing without a cane, and when asked by the ALJ, acknowledged that she tries "to use the cane occasionally" to help her with balance. R. 49. She testified that the cane had not been prescribed by a doctor. Id. Second, under the portion of Dr. Ohri's report asking for a description of gait and station, the examiner is asked to identify any assistive device that is required for ambulation and to give the medical basis for its use; the form also indicates the patient should be evaluated with and without the device and that any reason precluding testing without the device must be specified. R. 490. The only information recorded by Dr. Ohri during his consultative examination was, "[C]ane used as assistive device." Id. Dr. Ohri did not provide any indication that the cane was required for ambulation or state the medical basis for use of a cane. Third, even Dr. Campbell, the source Plaintiff placed so much emphasis on when arguing that the ALJ failed to accord proper weight to a treating physician, answered "no" to the question of whether Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking. R. 743.

The ALJ acknowledged Dr. Ohri's notation about Plaintiff using a cane, but as described above, the ALJ also contrasted that statement with other treatment records, including imaging of Plaintiff's back, conservative treatment plans of medication, epidural injections, and stretching exercises, as well as no credible restrictions imposed by a physician that would prevent Plaintiff from performing light work. Indeed, even during the examination in which Dr. Ohri mentioned Plaintiff's use of a cane, he found full strength in

her lower extremities. R. 490. Moreover, there is no medical documentation, as required by the Social Security regulation described above, establishing and describing the circumstances under which the cane is a medical necessity, let alone a medical necessity for a consecutive twelve-month period. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1505(a) and 416.905(a). Thus, there was no error in formulating Plaintiff's RFC based on the ALJ's treatment of information in the record about use of a cane as an assistive device during one of Dr. Ohri's consultative examinations.

**D.     The ALJ Properly Evaluated Plaintiff's Credibility.**

Plaintiff also contends that the ALJ improperly evaluated her credibility about the limitations imposed by her back pain when determining that she could perform light work. In large part, Plaintiff stakes her argument on this point to the incorrect proposition that the ALJ improperly evaluated the medical opinions upon which Plaintiff relies to support her claims of severe functional limitations. As recounted by the ALJ, Plaintiff contends she has low back pain of eight on a scale of one to ten every day and has had mixed results with taking pain medication. R. 20, 43-44. Plaintiff claims to be able to sit, stand, or walk for only twenty minutes each and states that she can lift and carry about five pounds. R. 20, 45.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's subjective claims. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations, the ALJ must

articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985); see also Mitchell v. Commissioner, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ."). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[5] The Eleventh Circuit does not require citation of particular phrases or formulations when making a credibility determination, but the reviewing court must be able to determine that the ALJ considered a claimant's medical condition as a whole. Dyer v. Barhnart, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

In discrediting Plaintiff's subjective complaints, the ALJ acknowledged Plaintiff's contention that "her back hurts whenever she attempts to do 'anything'" and that it is her back pain which is the most significant thing that keeps her from working. R. 20. He also noted the claimed significant functional limitations regarding the ability to sit, stand, or walk for only twenty minutes and lifting and carrying five pounds. Id. However, the ALJ juxtaposed these claimed restrictions with Plaintiff's other statements about participation in activities of daily living such as caring for her personal needs without assistance from others, cooking for herself, driving, doing some light cleaning and dusting at her home, and visiting her sister outside of her

---

[5]Under Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

home on a regular basis. R. 20, 25, 46. Plaintiff further stated that she would sometimes try to go outside or "try to do a little walking" to ease her pain. R. 21, 49. Plaintiff argues that participation in such everyday activities does not disqualify her from disability. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).[6] However, the ALJ did not rely solely on Plaintiff's daily activities to assess her credibility.

The ALJ also conducted an extensive review of the medical evidence in the case and found no credible medical support for such significant functional limitations that would prevent Plaintiff from working. The evidence showed 5/5 strength in her lower extremities during both of Dr. Ohri's consultative examinations, mild degenerative disc disease as characterized by her orthopedist who consistently recommended conservative case, and no significant cord or nerve root compression. R. 24-26, 405, 410, 486, 490, 513, 519, 700. As explained above and stated by the ALJ, the x-ray imaging and MRI studies revealed mild degenerative disc disease that was managed with prescription medication and injections. R. 23. Plaintiff now claims that the record does not show success in treating her pain because her prescription medications changed over time. Yet at the hearing before the ALJ, she testified that she takes medicine to make the pain in her leg go away, R. 48, and treatment notes from her orthopedic doctor repeatedly emphasize conservative care, to include medication, walking, and stretching exercises. See, e.g., R. 513. Moreover, Lewis prohibited relying solely on testimony of participation in everyday activities of short duration to reject a treating physician's opinion. An ALJ may still consider other activities of daily living in assessing a claimant's disability. See 20 C.F.R. §§ 404.1512(b)(1)(iii) and 404.1529(c)(3)(i); SSR 96-7P, 1996 WL 374186, at

---

[6]Although Plaintiff cited to Fourth Circuit case law, the Court will rely on the binding precedent of the Eleventh Circuit.

*3 (July 2, 1996); May v. Commissioner of Soc. Sec., 226 F. App'x 955, 958-59 (11th Cir. 2007); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).

In sum, the ALJ properly considered the credibility of Plaintiff's subjective claims concerning the severity of her functional limitations and explained why he rejected the claims and determined Plaintiff "has more functioning ability than she is willing to acknowledge." R. 25. Thus, the ALJ's decision is supported by substantial evidence, and this argument forms no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 29th day of July, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA